Not for Publication                                                                                              (Docket Entry No. 19)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| LIONEL BOLEN, | |
| Plaintiff, | Civil No. 06-2730 (RBK) |
| v. | **OPINION** |
| JOHN E. POTTER, POSTMASTER GENERAL, | |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Defendant John Potter, Postmaster General of the United States ("Defendant") for summary judgment on the complaint of Plaintiff Lionel Bolen alleging a hostile work environment in violation of federal law. For the reasons that follow, Defendant's motion will be granted.

## I.   BACKGROUND

Lionel Bolen, who is a sixty years old and is African American, began working for the United States Postal Service in Trenton in 1994. Bolen began working at the West Trenton branch and eventually moved to the downtown branch as a letter carrier. He worked full time in a floater position, which meant that he worked a different route each day on the day when the regular letter carrier for that route was scheduled to be off. (Bolen Dep. Oct. 2, 2007, 13:10-35.)

1

Between 1994 and 2002, he had no disciplinary problems or problems with his supervisors. (Bolen Dep. 14:13-20.)

Bolen's problems at the post office began when he changed the way he completed his mail route. (Bolen Dep. 33:8-13.) Prior to 2002, Bolen used his personal car (with compensation from the post office) to deliver the mail. However, in 2002 he began neither using his personal car nor a postal vehicle on his route; instead, he took city buses to various points along his routes and delivered mail on foot from those points. Because he was at the mercy of the bus schedule, Bolen would often have difficulty finishing his route on time.

During the time period at issue here, Bolen's supervisor was Justice C. Higham. Initially, Bolen and Higham got along fine. However, in February 2002, their relationship soured. According to Bolen, Higham began harassing Bolen and criticizing him for not completing his work on time. Bolen was accused of "stealing time," which is an expression meaning Bolen was viewed as taking too long to complete a particular route, resulting in being out of the office and on the street with the mail for more time than was necessary. Other letter carriers, particularly those who used the bus to get to routes, were also criticized, but according to Bolen, more intense criticism was directed towards him.

One of the routes Bolen worked was formerly handled by Frank Cucile, a seventy-year-old white male.[1] Cucile was given eight hours to complete the route and often received help when he could not finish it on time. Bolen was only given five and a half hours to complete the route, and he alleges that he was not always given help to complete the route when he needed it.

---

[1] The record is unclear on the spelling of this individual's last name. The Court adopts the spelling offered by Bolen.

When Higham was asked why Cucile received assistance to finish his route, Higham allegedly responded "because he's white." According to Bolen, Higham made other racially-motivated statements as well.

Bolen also accuses Higham of improper sexual conduct. Bolen says that Higham would afford preferential treatment to women who permitted him to fondle them. This conduct occurred in front of other workers, including Bolen, who found it offensive. Bolen also overheard Higham ask a female worker, "Do you lick and tell?"

In addition, Bolen accuses Higham of denying him sick time and vacation time. Bolen had difficulty receiving pay for what should have been paid sick leave and was required to submit unnecessary documentation (such as notes from his doctor). Bolen also was denied sick leave on one occasion when he requested to leave early. He also had a problem scheduling his paid vacation time in the summer of 2002, and he alleges that other individuals with less seniority received preferential treatment scheduling their vacation time.

Bolen filed a complaint against the Postal Service with the Equal Employment Opportunity Commission. He alleged he was subjected to a hostile work environment based on his race, gender, and age. After an investigation, a hearing was held before an administrative law judge, who concluded that Bolen had failed to establish a hostile work environment. (Def.'s Ex. B.) Bolen then filed a Complaint in this Court, alleging the creation of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA").[2] Higham was transferred

---

[2] Bolen's Complaint also attempts to plead violations of the Americans with Disabilities Act, 42 U.S.C. § 12101. This claim is dismissed for failure to state a claim, because the Complaint contains no allegations regarding disability. Bolen's claims under 42 U.S.C. § 1981

to a different office sometime in 2004, and Bolen still works for the Postal Service in Trenton in a floater position.

## II.     STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating the evidence presented by the parties, the Court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

---

are also dismissed because Title VII provides the exclusive remedy for employment discrimination claims against the federal government. Brown v. Gen. Servs. Admin., 425 U.S. 820, 832-35 (1976).

Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III.   DISCUSSION

### A.   Age, Race, and Gender Discrimination Claims

The method and manner of proving a violation of Title VII is the same as proving a violation of the ADEA "when there is no material difference in the question being addressed," and the Third Circuit uses case law under the two statutes interchangeably in the context of employment discrimination. Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 157 (3d Cir. 1995). The Court analyzes Bolen's claims under the two different statutes together.

To state a hostile work environment claim under Title VII and the ADEA, the plaintiff must show that (1) he suffered intentional discrimination because of his race, gender, or age; (2) the harassment was severe or pervasive; (3) the harassment detrimentally affected him; (4) the harassment would detrimentally affect a reasonable person in that position; and (5) the existence of respondeat superior liability. Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006); Glanzman v. Metro. Mgmt. Corp., 290 F. Supp. 2d. 571, 581 (E.D. Pa. 2003). In analyzing a hostile work environment claim, the Court may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).

To be actionable any alleged harassment must be so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive environment. Weston v.

Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001). The requirement contains both a subjective and objective component. Jensen, 435 F.3d at 451 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998)). That is, the alleged harassment must be so severe or pervasive that it not only detrimentally affects the plaintiff but would also detrimentally affect a reasonable person in the same position as the plaintiff. Id. As mentioned above, the factors to be considered include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quoting Harris, 510 U.S. at 23). No single factor is dispositive; the inquiry must focus on the totality of the circumstances. Id. at 451-52.

Bolen alleges that Higham's actions in accusing him of stealing time, not providing assistance with his route, making racial remarks, engaging in improper sexual contact with female workers, denying sick leave, or making it difficult for Bolen to be properly compensated for sick time created a hostile work environment. Defendant contends that even assuming that all these actions occurred, they were not severe or pervasive enough to have adversely affected the terms and conditions of Bolen's employment.

With regard to his claim under the ADEA, Bolen has provided no evidence that he was harassed because of his age. Bolen testified at his deposition: "I always felt that I was the oldest carrier, I guess. . . I always felt that if [Higham] could make an example out of me everyone would just kind of. . . ignore what was going on. . . ." (Bolen Dep. 26:21-24.) However, this is not evidence of intentional discrimination based on age. A feeling about one's status, without more, is not evidence of discriminatory intent, and there is no evidence about the ages of the workers at the office with the exception of Cucile, who was older than Bolen and was allegedly

6

treated better.  See Taylor v. Cherry Hill Bd. of Educ., 85 F. App'x 836, 839 (3d Cir. 2004) ("In the context of discrimination claims, we have explained that conclusory allegations of discrimination, in the absence of particulars, are insufficient to defeat summary judgment.").

Bolen's claims regarding Higham's conduct towards women can be read as a claim of "sexual favoritism."  See EEOC Policy Guidance on Employer Liability Under Title VII for Sexual Favoritism, EEOC Notice No. 915-048, at 2 (Jan. 12, 1990) ("EEOC Policy Guidance"). The EEOC Policy Guidance notes that sexual favoritism can be a basis for a hostile work environment claim by both men and women "regardless of whether any objectionable conduct is directed at them" "[i]f favoritism based upon the granting of sexual favors is widespread in a workplace."  Id.  There are no grounds for such a claim "[w]hen an employer discriminates in favor of a paramour, [as] such an action is not sex-based discrimination, [because] the favoritism, while unfair, disadvantages both sexes alike for reasons other than gender. . . ."  Badrinauth v. MetLife Corp., No. 04-2552, 2006 WL 288098, at * 4 (D.N.J. Feb. 6, 2006) (quoting Wilson v. Delta State Univ., 143 F. App'x 611, 614 (5th Cir. 2005)); see also Rosa v. Seiko Corp. of America, Civ. No. 05-4406, 2008 WL 229118 (D.N.J. Jan. 25, 2008).

Bolen has produced some evidence tending to show that favoritism based on the granting of sexual favors existed in the workplace.  (Bolen Dep. 126:24-128-:15; Hr'g. Tr. 158-167.) However, he has not provided evidence from which a reasonable juror could conclude that this conduct was so widespread that it altered the conditions of his employment and created an abusive working environment.  Where courts have held that sexual favoritism created a hostile work environment, the favoritism has beem "so pervasive. . . that it can reasonably be said that such conduct created a hostile or offensive work environment which affected the motivation and

work performance of those who found such conduct repugnant and offensive." Broderick v. Ruder, 685 F. Supp. 1269, 1278 (D.D.C. 1988) (cited in EEOC Policy Guidance); see also Spencer v. Gen. Elec. Co., 697 F. Supp. 204, 218-19 (E.D. Va. 1988) (finding hostile work environment where "the workplace was pervaded by sexual innuendo, sexually-oriented games and intimate touching"). There is evidence that Bolen and Denise Savas, another postal employee, found Higham's conduct towards several women in the office offensive, and Savas believes she was initially denied a route transfer she wanted because of preferential treatment given to another of the female workers. (Bolen Dep. 126:24-128-:15; EEOC Hr'g. Tr. 158-167, Sept. 22, 2005.) However, there is not evidence of the pervasive, "oppressive sexual accentuation" that courts have looked to in evaluating sexual favoritism claims. Drinkwater v. Union Carbide Corp., 904 F.2d 853, 862 (3d Cir. 1990) (discussing when sexual relationship between a supervisor and a co-employee could create a hostile working environment). Also, the one inappropriate sexual remark attributed to Higham is not sufficient to give rise to a hostile work environment. See Drinkwater, 904 F.3d at 863 (two inappropriate gender-based comments are insufficient to constitute pervasive discrimination).

Bolen's claims of racial harassment are limited to Higham's statement indicating that another worker received help on his route because he was white. Though Bolen at his EEOC hearing indicated that Higham made racial comments on "numerous occasions" (Hr'g. Tr. 28:20-24), at his deposition he said that he had not heard Higham make other explicit racial remarks. (Bolen Dep. 80:18-24.) There is no evidence of other specific race-based remarks and no other evidence of direct racial discrimination.

Bolen's problems with his sick and vacation time do not tend to provide evidence of

discrimination either. Neither Higham nor other supervisors at the downtown post office branch participated in calculating or assigning vacation time, and Defendants have provided legitimate employment-related reasons for all of the instances Bolen claims his sick leave was denied or not properly compensated, and almost all of these problems were resolved in Bolen's favor. (Prosetti Dep. 61:18-65:6 (describing the centralized process for allocating prime vacation weeks); Bolen Dep. 65:20-24 (paid for day after sick leave had initially been denied); (100:13-17) (hours mistakenly classified as leave without pay period reimbursed in cash); Hr'g Tr. 39:23-41:4) (letter of warning regarding time away from work without leave removed from personnel file).)

      The Court concludes Bolen has not provided sufficient evidence from which a reasonable jury could conclude that he was subjected to a hostile work environment based on his age, race, or gender. Instead, the record before the Court establishes that many workers of different ages, races, and genders had difficulties with the supervisors, particularly Higham. There is not evidence showing that Bolen was subject to intentional discrimination based on any protected characteristic, whether Bolen's contentions based on age, gender, and race are viewed singly or in combination with the others. Even if Bolen could point to intentional discrimination based on his age, race, or gender, there is not evidence that the harassment was severe or pervasive enough create an abusive working environment.

      The record is clear that many employees, both men and women and both black and white, complained about Higham and thought he was treating them unfairly. James Ritz, the union shop steward for part of the period at issue, noted at the EEOC hearing that in the fall of 2002 about seventy-five percent of the letter carriers at the downtown post office complained to him about how they were treated. (Hr'g. Tr. 140:16-141:18.) Denise Savas said that she was hassled

9

by supervisors including Higham, as were other workers. (Hr'g Tr. 164:19-2; 171:3-6; 172:10-18.) Bolen admitted that other employees, both men and women, black and white, were criticized for their work, particularly other employees who relied on buses to get to their routes. (Bolen Dep. 26:1-12; 27:2-20.) Some of these employees began using their private cars again to deliver their routes based on this criticism. (Bolen Dep. 43:3-15.) When ask why he felt he was singled out, Bolen could not say. (Bolen Dep. 83:24-25.) Though he also asserted at other times that he was criticized more intensely because of his age, race, and gender, the evidence instead points to criticism leveled at all workers who took the bus and who had problems completing their routes on time. See Boyer v. Johnson Matthey, Inc., Civ. No. 02-8382, 2005 WL 35893, *13 n.18 (E.D. Pa. Jan. 6, 2005) (noting that "there is less likely to be a violation of Title VII when such derisive behavior is directed indiscriminately at all employees") (citing Bolden v. PRC, Inc., 43 F.3d 545, 551 (10th Cir. 1994)). When asked at his deposition what actions or statements Higham had directed specifically to Bolen, Bolen could not point to anything other than the previously discussed inappropriate contact with other women in the office. (Bolen Dep. 43:23-44-20.) Moreover, Bolen was never disciplined in any formal way for his timeliness problems.[3] (Bolen Dep. 61:2-4.)

A jury would have no basis for concluding that any of the difficulties Bolen experienced with Higham were motivated by age, gender, or race-based animus. See Walton v. Mental Health Ass'n of Southeastern Pennsylvania, 168 F.3d 661, 667 (3d Cir. 1999) (noting that a poor or offensive work relationship with a superior does not automatically rise to the level of a

---

[3]Though Bolen was written up once for problems with the delivery of his route, this event occurred outside of the time period at issue, and Higham was not the supervisor who issued the letter of warning. (Bolen Dep. 23:17-24:7.)

10

"hostile" work environment). Consequently, Bolen has not established the existence of a hostile work environment.

B. **Retaliation**

Bolen's Complaint also seems to include a claim that he was subjected to retaliation. The Complaint contains no other facts regarding this alleged retaliation. A claim for retaliation in violation of the First Amendment requires a plaintiff to demonstrate: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d 2006).

Defendant seeks summary judgment on this claim, arguing that Bolen has provided no evidence of either relevant protected conduct or resulting adverse action. The Court agrees; Bolen has not indicated what protected conduct on which this claim is based, and in any event the record establishes that Bolen did not suffer any adverse employment actions. Summary judgment is granted to Defendant on this claim.

IV. **CONCLUSION**

Though Bolen claims in his brief that the "harassment discussed is only the tip of the iceberg," without further actual evidence of discriminatory harassment, the Court cannot say that Bolen experienced severe or pervasive discrimination that altered the conditions of his employment. Because Bolen has not put forth evidence from which a reasonable jury could conclude that he was subjected to a hostile work environment and he has put forth no evidence of retaliation, summary judgment will be granted to Defendant. An accompanying order will issue

today.


Dated:     June 13, 2008            /s/ Robert B. Kugler
                                   ROBERT B. KUGLER
                                   United States District Judge